THAYER *vs.* CLARK, impleaded, &c.

The plaintiff brought suits against A. and P., as administrators of N. A. deceased, for services rendered to N. A., and recovered judgments. He then applied to the surrogate, for an order that A. and P. pay such judgments out of the estate of the intestate, and an order was made by the surrogate, directing the payment by A. and P. within five days. Payment was not made, and the decree being docketed in the common pleas, an execution was issued from that court, against the administrators. This not being paid, the surrogate, on application made to him, assigned to the plaintiff the official bond given by the administrators. In an action upon such bond, against the sureties, *Held* that the proceedings of the plaintiff were regular; and that the action was well brought.

*Held, also,* that the decree of the surrogate was conclusive upon the administrators. That if they had any defense it should have been made in that proceeding.

That the surrogate's decree established the indebtedness of the estate to the plaintiff; and when that was established by the decree of a competent tribunal the administrators were bound to pay it. And that on their neglecting to do so, the bond which they gave as administrators, with sureties, was forfeited.

The sureties in such a bond have no right to go back of the decree of the surrogate directing the payment of a debt, by the administrators, and show

that such decree was erroneous. It is conclusive as to the indebtedness of the estate, and as to the obligation of the administrators to pay it.

The act of 1837, authorizing the assignment of an administrator's bond, to a creditor, by the surrogate, where an execution issued upon his decree should have been returned unsatisfied, and the prosecution of such bond by the creditor, (*Laws of* 1837, *ch.* 460,) applies to *any* decree made by the surrogate for the payment of money, by an administrator, and not merely to a decree for a general accounting by him.

THIS was an action upon a bond given by Sidney Allen, Alvah Phelps, Jacob Loomis and Albert Clark, for the faithful administration by Allen and Phelps, of the personal estate of an intestate, Nahum Allen, deceased. It was tried before H. W. Robinson, referee, on the 7th day of October, 1864. Clark was the only defendant who appeared. The following are the material facts of the case as proved on the trial : On the 23d day of February, 1858, letters of administration were granted by the surrogate of the county of New York, to Sidney Allen and Alvah Phelps. To obtain these letters they executed a bond, together with Jacob Loomis and Albert Clark, in the penal sum of thirty thousand dollars, conditioned, that they should faithfully execute the trust, and *also should obey all orders of the surrogate of the city and county of New York,* touching the administration of the estate committed to them. On the 22d day of April, 1862, the plaintiff presented his petition to the surrogate, setting forth that he was a judgment creditor of Nahum Allen, deceased. That letters of administration on said estate had been granted by the surrogate of the county of New York, to Allen and Phelps, more than four years prior to said application, and that said administrators had not filed their account, and praying that a citation issue, requiring them to account before said surrogate, and show cause why the judgments of the petitioner, against the said estate, should not be paid. Thereupon, the surrogate made an order requiring the administrators to appear before him on the 30th day of May, then next, and show cause why the judgments of the said petitioner should not be paid. On the 23d day of May, 1862, a copy of the above

order was personally served upon each of said administrators. On the day appointed, the administrators appeared before the surrogate, and after hearing the proofs and allegations of the parties in the premises, and *it having been proved that there were assets in the hands of said administrators, more than sufficient to pay all debts, claims, and demands, against the estate of said deceased,* the surrogate ordered that said Allen and Phelps, as such administrators, pay within five days thereafter, to said Thayer, the judgment creditor, the amount of his several judgments, with costs and disbursements, amounting in all to $1842.70. The certificate of the surrogate, stating the names of the parties against, and in favor of, whom the decree was made, with the trade, profession and occupation of the parties, their places of residence, and the amount of debts and costs directed to be paid by such decree, was filed and docketed in the county clerk's office, of the county of New York, on the 26th day of November, 1862. An execution was issued thereon, on the 28th day of November, 1862, against Sidney Allen and Alvah Phelps, (*see* 5 *Hill,* 504,) and returned unsatisfied. On the 7th day of January, 1863, the surrogate made an order assigning the bond to the plaintiff for the purpose of being prosecuted, in pursuance of said assignment. This action was brought on the 30th day of July, 1863.

The plaintiff then proved the omission and refusal of said administrators to perform the decree for the payment of said debt to the plaintiff, and rested his case.

The defendant then offered to prove by the administrators that they were never sued, and never authorized an attorney to appear for them in the actions in which the plaintiff's judgments were obtained. Also, payment by Nahum Allen, deceased, of $445, and offered in evidence five receipts, in the hand writing of the plaintiff, or his law partner. The plaintiff objected to the admission of the evidence, and the referee sustained the objection, holding that the surrogate's decree was conclusive proof as to the indebtedness of the estate, and that

Thayer *v.* Clark.

said decree was final ; to which ruling the defendant duly excepted. The defendant then moved to dismiss the complaint, on the following grounds : *First.* That the decree, or two orders, of the surrogate, on which this action is founded, are without authority in law, and are void, and consequently the plaintiff has no right to sue or recover on the bond.

*Second.* That no proper foundation had been laid for any proceedings on the bond of the administrators.

The referee denied the motion, and reported in favor of the plaintiff for the sum of $2281.06, to which the defendant excepted. And judgment being entered in favor of the plaintiff for $2488.97, damages and costs, the defendant appealed.

*F. G. Young* and *J. W. Edmonds,* for the appellant. I. The remedy taken in this case, by suing the bond of the administrator, is erroneous, and not warranted by statute. The plaintiff obtained three judgments in the Supreme Court against the administrators of Nahum Allen, payable out of assets, and not out of individual property of the administrators. He applied to the surrogate for leave to issue executions, and on applying for such leave, necessarily cited the administrators to account. It is alleged that they accounted, and the surrogate ordered the administrators to pay, and awarded execution against their individual property. The execution was issued, not against assets, but against individual property of administrators. On return of *nulla bona* the bond was assigned to the plaintiff, and this suit brought. The citation to show cause why execution should not issue was a proceeding under the Revised Statutes, to enforce the collection of judgments in another tribunal, yet the subsequent proceedings were under the act of 1837. The two proceedings provided by these statutes are distinct and different, and for entirely different purposes, and the plaintiff's error has been in commingling them, as if all designed for the same purpose.

I. *As to the proceedings under the Revised Statutes.* Before the Revised Statutes an administrator could be sued at any time, and the first execution would be satisfied out of assets liable to execution. The Revised Statutes intended to destroy that preference. (*Revisers' Notes, 5 N. Y. Stat. at Large,* 380.) They did that by sections 31, 32, 2 Revised Statutes, § 88. (*2 N. Y. Stat. at Large,* 90. *Id.* 120, § 20.) Such is the construction put upon the statutes by the court. (*Dudley* v. *Griswold,* 2 *Bradf.* 30. *People* v. *Albany Mayor's Court,* 9 *Wend.* 488. *Dox* v. *Backenstose,* 12 *id.* 542.) Several important principles are established by those cases : (1.) A judgment now has no preference, but must abide the course of distribution. (2.) The surrogate has no concern with the individual property of the administrator, but with property of deceased persons only. (3.) When an administrator is personally liable — even for costs — there is no need of applying to the surrogate for leave to issue execution. Leave is grantable only when the execution is against the assets. (4.) Where leave is applied for and granted, the execution is out of the court where the judgment is. Hence it is that if permission is granted, and there are assets *liable to execution,* the judgment becomes as effective as in any other case. But if permission is not granted, and there are no *such* assets, then the whole effect of obtaining the judgment is proving the debt. If the judgment is against the administrator personally, and not against the assets, either in whole or in part, for debt or costs, the surrogate has nothing to do with it. No permission to issue execution is needed. In both cases the creditor's only remedy is on final distribution, when he shares with all others of the same class.

II. *As to the remedy under the act of* 1837, *as amended in* 1844. (*4 N. Y. Stat. at Large,* 498, §§ 63–65.) Under the Revised Statutes the surrogate was given power to have a final accounting and decree payment. (*2 N. Y. Stat. at Large,* 94, § 52 ; 96, § 61 ; 98, § 70 ; 120, § 18 ; 229, § 1.) The only mode provided by the Revised Statutes for enforc-

ing a decree on such final accounting was by attachment. (2 *N. Y. Stat. at Large,* 230, § 6. *Dakin* v. *Hudson,* 6 *Cowen,* 224. *Seaman* v. *Duryea,* 11 *N. Y. Rep.* 324. *S. C.* 10 *Barb.* 528.) By an act passed in 1830, a further mode was provided, for enforcing surrogates' decrees on final accounting, and that was by suing the administrator's bond. (*Laws of* 1830, *chap.* 320, § 23. 2 *N. Y. Stat. at Large,* 120, § 19, *a.*) In 1837, a still further remedy was provided by a general act in relation to surrogates' courts generally, and providing only a mode of enforcing a surrogate's decree on final accounting. (*Laws of* 1837, *ch.* 460, §§ 63, 64, 65. 4 *N. Y. Stat. at Large,* 498.) That remedy was by docketing the decree in the county clerk's office, issuing execution out of the common pleas, and assigning the bond. The proceedings on the bond under the act of 1830, were by suit by the surrogate, in the name of the people. The proceedings under the act of 1837, were by suit in the name of the assignee. In the former case, the surrogate collected the whole bond and distributed it as assets. In the latter case, the party sued in his own name and recovered only what was due to him. Thus the object of the statutes to destroy preferences, and put all of the same class on an equality is provided for. (1.) The creditor may sue and obtain judgment, and thus prove his debt. (2.) The surrogate may permit him to issue execution against assets, *but only for his proportion of such assets,* and not for the whole amount of his debt. (3.) If the surrogate refuse permission, or there are not enough of assets liable to execution, the judgment creditor must, like all other creditors, wait for a final accounting and distribution. (4.) If on such final accounting there are assets enough to pay all, a decree is made for that; if assets enough only to pay part of all the debts, a decree is made for a proportional distribution. (5.) Such decree is enforced by docketing the decree, issuing execution out of the common pleas, and on return of *nulla bona* such creditor taking an assignment of the bond, and recovering the amount of

Thayer v. Clark.

his debt. The system is complete and simple, effecting the object of equality among creditors, ultimate payment to the creditor of the amount of assets, and the ultimate personal liability of the administrator and his sureties to that extent. The plaintiff has made several departures from this mode of proceeding. (1.) He has in all his judgments obtained costs against the administrators personally, and for that he has not issued any execution out of the Supreme Court, where his judgments were obtained. (2.) He has never issued any execution for his debt against the assets out of the Supreme Court. (3.) He applied for leave to issue such executions— that is, executions on his judgments, out of the court in which they were obtained. (4.) He never obtained such leave, but, using the machinery provided for a final accounting, issued out of the common pleas one single execution for the amount of all three judgments. (5.) After presenting his petition for leave to issue his three executions out the Supreme Court, he proceeds, *ex mero motu*, to treat the whole thing as a final accounting. (6.) On the accounting which was had he cited only the administrators. No citation to other creditors as required by law. (2 *N. Y. Stat. at Large*, 96, § 60.) (7.) The decree that he obtained was against the administrators personally, and not against the assets. (8.) The execution that he issued was against the administrators personally, and not against the assets. (2 *N. Y. Stat. at Large*, 376, § 3.) (9.) This decree and execution are against both administrators, Allen and Phelps: *non constat* that Allen ever received a dollar of the assets, but Phelps had it all, and the bond sued was security for Allen only, and not for Phelps at all. (10.) And he makes the surrogate deal with the individual property of Phelps and Allen, and not with the assets in their hands as administrators. To determine whether they are thus personally liable, is entirely without the surrogate's jurisdiction, and belongs exclusively to another forum. (1.) In his judgments in the Supreme Court, the plaintiff recovers some $400 of costs, without any compli-

ance with the statute.    (2 *N. Y. Stat. at Large,* 72, § 41.
2 *R. S.* 90.)    (2.) He then makes the Surrogate's decree a
personal liability for the principal and interest of his debt.
If these proceedings can be sustained, then may a prosecut-
ing creditor,    (1.) Recover costs without the adjudication
of the court.    (2.) Enlarge the jurisdiction of the surrogate
over the property of the living.    (3.) And cut off all other
creditors by a proceeding without notice to them, from hav-
ing any benefit from an administrator's bond.    (4.) And all
this against a surety, without notice to him of any of the
proceedings.

II. The referee held, that the decree of the surrogate,
ordering the money paid, was conclusive on the parties to
this suit, and therefore he excluded the evidence of payments
by the intestate, and the records of the judgments in the
Supreme Court.    In this he erred.    1. None but parties or
sureties are concluded by a judgment, and the sureties are
concluded only when they have had notice of the suit, and
an opportunity to defend.    (*Thomas* v. *Hubbell,* 15 *N. Y.
Rep.* 405.    *Tyler* v. *Ulmer,* 12 *Mass. R.* 166.    1 *Green. Ev.*
§§ 522, 523, 535.)    2. It is only when one has agreed to be
bound by the event of a suit, that he is concluded by the
judgment, though not a party to it.    (*Westervelt* v. *Smith,*
2 *Duer,* 449.    *Turpin* v. *Thomas,* 2 *Hen. & Munf.* 139, 147.
2 *Cowen & Hill's Notes to Ph. Ev.* 816, 817.)    3. For the
purpose of establishing the fact that a judgment has been
rendered, it is conclusive.    But with reference to any fact,
upon whose supposed existence the judgment is founded, it
may be *res inter alios,* and not conclusive.    (2 *Cowen & Hill's
Notes,* 821.)    This is particularly true of judgments in the
surrogate's court.    (*Dakin* v. *Hudson,* 6 *Cowen,* 224.    *Ford*
v. *Walsworth,* 15 *Wend.* 449.    2 *R. S.* 91, § 65.    *Id.* 116,
§ 21.    *Simkins* v. *Cobb.* 2 *Bail. S. C.* 60.    *Weston* v. *Wes-
ton,* 14 *John.* 428.)    4. The evidence rejected would have
established the following facts :  (1.) That the bills rendered
to the administrators, were different from, and less than,

those recovered on. (2.) That in one of the suits no process was served on the administrators, but an attorney voluntarily appeared for them (no authority for doing so being shown.) Such an appearance, without authority shown, is not binding. (*Campbell* v. *Bristol,* 19 *Wend.* 101. *Allen* v. *Stone,* 10 *Barb.* 547.) (3.) Costs were taxed by consent of the attorneys, and by an award of the referee, and not by award of the court. (2 *R. S.* 90, § 41. 2 *N. Y. Statutes at Large,* 92. *Buckhout* v. *Hunt,* 16 *How.* 408.) (4.) On the trial before the referee, payments by the intestate were excluded and disallowed. (5.) The statute of limitations was waived by the attorneys. (6.) That the claim on which the plaintiff sued was a joint one belonging to himself and partners, and no transfer to him was shown. All these were valid objections to the recoveries against the administrators, and it was competent for their sureties to set them up in a suit on their bond.

*B. C. Thayer,* respondent, in person. I. The referee properly excluded the other evidence offered by the defendants, upon the ground that the surrogate's decree was conclusive proof as to the indebtedness of the estate ; that said decree is final, and cannot be impeached in any collateral proceeding. (*The People* v. *Downing,* 4 *Sandf. R.* 189. *Baggott* v. *Bulger,* 2 *Duer, R.* 160 *and* 169. *The Supervisors of Onondaga* v. *Briggs,* 2 *Denio's R.* 33. *The People* v. *Laws,* 3 *Abb. R.* 450. *Affirmed,* 4 *Abb. R.* 292. 4 *Bosw.* 379 *and authorities there cited.*) In a suit on a judgment, or decree, no matter of defense can be pleaded, or proven, which existed anterior to the decree. (*Biddle* v. *Wilkins,* 1 *Peters' R.* 686 *and* 692.)

II. The defendants' motion to dismiss the complaint was properly denied. Power is conferred upon the surrogate to inquire into the condition of the assets, and decree the payment of debts, against the administrator of deceased persons, at the instance of a creditor, at any time after six months shall have elapsed from the granting of the letters of adminis-

tration. As to the mode of enforcing debts against an estate, see *Dayton's Sur. ed. of* 1855, *p.* 342, *ed.* 1861, *p.* 373. 3 *Revised Statutes,* 5th. *ed. p.* 204, *Dec.* 18. *Fitzpatrick* v. *Brady,* 6 *Hill,* 582. *Butler* v. *Hempstead,* 18 *Wend.* 668. *Kidd* v. *Chapman,* 2 *Barb. Ch.* 414. *Mitchell* v. *Mount,* 19 *Abb.* 1. 31 *N. Y. Rep.* 356. 6 *Barb.* 356. 24 *id.* 60.)

As to the mode of enforcing the surrogate's decree.

III. " After any decree is made by a surrogate for payment of money by an administrator, on application, he shall make out a certificate, stating the names of the parties against and in favor of whom the decree is made, with the trade, profession or occupation of the parties respectively, and their places of residence, in which he shall state the amount of debt and costs directed to be paid by said decree. (*Dayton's Surrogate, last ed. p.* 577. *See Laws of* 1837, *ch.* 460, *sec.* 63. *Dayton's Surrogate, ed. of* 1855 *p.* 544.)

IV. Sec. 64, as amended by the act of 1844, provides that on such certificate being filed with the clerk of any county, the same shall be entered and docketed in the books now required by law, for the purpose of docketing judgments, the transcripts or certificates of which shall be filed with such clerk, and shall thenceforth be a lien upon all the lands, tenements, real estate, and chattels real of every person against whom such decree shall be entered, situate in the county in which such surrogate's certificate may be filed, and execution shall issue thereon in the same manner as though the same was a judgment recorded in the court of common pleas, of said county. (*See Laws* 1844, *ch.* 104, *sec.* 1, 2 *and* 64.) The 3 *R. S. vol.* 2, *p.* 320, is correct on this point; the 4th and 5th editions are both incorrect. (*Dayton's Surrogate, ed. of* 1855, *p.* 29. 1 *Duer,* 698.)

V. " If such execution be issued and returned unsatisfied, the surrogate shall, on application, assign the bond given by such administrator to the person in whose favor such decree is made, for the purpose of being prosecuted. (*See Laws,* 1837, *ch.* 460, *sec.* 65.)

VI. Section 63 and section 64, as amended by the act of 1844, and section 65, of the act of 1837, provide a remedy in *addition* to the *remedy* provided by the Revised Statutes in title 5, chapter 6, part 2, 5th edition, page 204, § 19, entitled, " *Of the rights and liabilities of Executors and Administrators.*" The act of 1837, is not a *substitute* for, nor does it *repeal* the provisions of the Revised Statutes. It only furnishes *another proceeding which a party may adopt, instead of the statutory proceeding above cited.* (*People* v. *Guild*, 4 *Denio's R.* 551.) Under the provisions of the Revised Statutes, sections 19 and 20, after a trial at law and judgment on the merits against an administrator, the plaintiff could apply to the surrogate for leave to issue execution, and if, after citation and hearing, the administrator had assets in his hands, &c. the surrogate granted an order that execution issue. Under the provisions of the act of 1837 and 1844, after the decree of the surrogate has been made and docketed, requiring the payment of a specific sum of money, execution issues of course, *founded on the decree itself.* Suit may be brought upon the bond set forth in the complaint, though the decree had not been docketed, execution issued and returned, or the bond assigned. (*People* v. *Guild*, 4 *Denio*, 551. *People* v. *Rowland*, 5. *Barb.* 449. *Baggott* v. *Boulger*, 2 *Duer*, 170.)

VII. In this action, the decree of the surrogate directing the payment of the judgments is conclusive upon *all* the defendants, both *principals* and *sureties*, and cannot be impeached in any collateral proceeding. (*The People* v. *Downing*, 4 *Sandf.* 189–91. *Baggott* v. *Boulger*, 2 *Duer*, 160–69. *The People* v. *Laws*, 3 *Abb.* 450. *Affirmed in* 4 *Abb.* 292. *Thomas* v. *Hubbell*, 15 *N. Y. Rep.* 405. *Lee* v. *Clark*, 1 *Hill*, 56. *Rapelye* v. *Prince*, 4 *Hill*, 119. *People* v. *Dunlap*, 13 *John.* 437.)

VIII. The proper parties were summoned, and appeared before the surrogate. The service of the citation was a jurisdictional fact, and was proved affirmatively, so that the sur-

rogate had jurisdiction of the persons, as well as of the subject matter, and the judgment which he pronounced is conclusive upon them. (*Vanderpoel* v. *Van Valkenburgh,* 6 *N. Y. Rep.* 197. *Dykeman* v. *The Mayor,* 5 *id.* 434. *Bumstead* v. *Read,* 31 *Barb.* 661.)

IX. It appears from the *decree* of the surrogate, that there are assets in the hands of the said administrators *over and above what will be sufficient to pay all debts, claims and demands, against the estate of the said deceased.*

X. The common law rule, that an action on a bond must be brought in the name of the obligee, is abrogated by the Code. It must now be brought in the name of the real party in interest. (2 *Duer,* 170.)

For the practice of enforcing the payment of judgments in surrogates' courts, see *Dayton on Surrogates,* ed. 1861, *p.* 373, under the head, " *Of the Enforcement of Debts against the Estate, whether in Judgment or not."* Also same edition, page 577, under the head, " *Of Enforcing the Surrogate's Decree."*

*By the Court,* INGRAHAM, J. The plaintiff brought suits against Allen and Phelps, as administrators, &c. of Nahum Allen, deceased, for services rendered to the intestate, and recovered judgments against them. He then applied to the surrogate for an order that the administrators pay such judgments out of the estate of the intestate, and an order was made by the surrogate, directing the payment by the administrators within five days. The payment was not made, and the decree was docketed in the common pleas, and an execution issued from that court, against the administrators, for the amount due. This not being paid, an application was made to the surrogate, and the surrogate assigned to the plaintiff the bond given by the administrators. This action was then brought on the bond, against the sureties.

The defendant contends that these proceedings are irregular, and that the plaintiff is only entitled to payment on a general

Thayer *v.* Clark.

accounting ; and then to share equally with the other credit-
ors, on a final distribution. He also claimed, before the
referee that he was not bound by the judgments, or the decree
of the surrogate ordering the money paid, and that he had a
right to make a defense to the recovery by the plaintiff, by
showing that the decree of the surrogate was erroneous. We
think, upon both grounds, the appellant was in error.

The decree of the surrogate was conclusive upon the ad-
ministrators. If they had any defense, it should have been
made in that proceeding. It established the indebtedness of
the estate to the plaintiff. When that was established by
the decree of a competent tribunal, the administrators were
bound to pay it. On their neglect to do so, the bond which
they gave with sureties, as administrators, was forfeited. By
that bond the sureties bound themselves for the faithful per-
formance by the administrators of their trusts, and for obedi-
ence to all orders of the surrogate touching the administration
of the estate. The sureties have no right, under such a bond,
to go back of the decree of the surrogate and show that such
decree was erroneous. It is conclusive, as to the indebted-
ness of the estate ; and as to the obligation of the adminis-
trators to make the payment.

Nor can there be any doubt as to the power of the surro-
gate to decree payment of a debt, against an administrator,
after the lapse of six months from the granting of letters of
administration. (3 *R. S.* 5th ed. *p.* 204.) The intent of this
provision was to allow a payment of a debt due from an
estate where the surrogate was satisfied that there were assets
in the hands of the administrator, sufficient to pay all the debts,
after six months (the time for creditors to present their
claims.) It was very easy to ascertain whether the assets
were sufficient for that purpose, and if so, to order payment
of the debt due to any creditor.

By the act passed in 1830, (3 *R. S.* 204, § 19,) the surro-
gate was authorized to cause the bond to be prosecuted and
the money collected on such bond applied to the satisfaction

of the decree.. This provision, however, contemplates the prosecution of the bond by the surrogate, and not its assignment to the creditor. That is authorized by the 63d, 64th and 65th sections of the act of 1837. (*Laws of* 1847, *ch.* 460.) It was said on the argument, that this only applied to a general accounting ; but such is not the evident intent of the statute. It applies to *any* decree made for the payment of money by an administrator. It requires a certificate of the amount directed to be paid, and the person to whom it is ordered to be paid, and provides for a judgment in favor of such person, and an assignment of the bond to the creditor named, to be prosecuted for his sole use. These were general provisions, applicable to all cases before the surrogate where money was ordered to be paid to creditors, and not merely to a general accounting of the administrator, in regard to the estate. The judgment should be affirmed.

[NEW YORK GENERAL TERM, January 7, 1867. *Leonard, Clerke* and *Ingraham,* Justices.]